Thank you everybody for convening remotely today. This is Judge Menashe. I'm joined on the phone by my colleagues, Judge Sack and Judge Wesley. We're going to hear argument today in one case, number 19-4141, United States v. Sepulveda. So let's hear first from counsel for the appellants. Good afternoon, your honors. May it please the court. My name is Yu Han, and I represent the appellant, Mr. Sepulveda. Mr. Sepulveda challenges this 24-year sentence as both procedurally and substantively unreasonable. Procedurally, the district court failed to meet the higher descriptive obligation required to justify a 53-month upward variance. The guidelines range here, which is in and of itself substantial, already accounted for the various factors that appear to have driven the district court's sentence. The district court didn't adequately explain what separated this particular case from the mine run of cases covered by the guidelines that would support such a major variance. The district court also erred procedurally in failing to consider Mr. Sepulveda's acquittal on the 924c count when sentencing him based on the brandishing of a gun during and after the robbery. The trial record makes very clear that the jury rejected the witness testimony that Mr. Sepulveda threatened either of them with a gun. And yet, the record is silent as to what consideration, if any, did the district court give to that acquittal. So you're saying that he could, as a matter of law, he could have given consideration to it, but there's nothing in the record that shows he did or how he did it. That's correct, Your Honor. There's nothing preventing the district court from considering the acquittal, but under the current law, the district court must give a specific explanation as to what consideration he gave to the jury's acquittal. Okay. You say current law, you have a particular case in mind with Sindema, perhaps, or is that your other position? I believe that we cited several cases in our brief, but very briefly, under this court's decision in U.S. v. Vaughn and U.S. v. Archer, which was decided in 2011, both said... I'm sorry, I thought Your Honor was going to say something. No, thanks. Please continue. Both of those cases made it very clear that even though the court could consider acquitted conduct as relevant conduct for sentencing purposes, the court was under obligation to, and I quote, Well, why do you say that the district court didn't do that? I mean, didn't the district court in this case say that the sentence would have been higher had he not been acquitted on the firearms offense, but then when considering the seriousness of the other offenses for which he was convicted, he says that the fact that there was a gun involved made it more serious? That's precisely the part of the record that we're taking issue with, Your Honor. The district court appeared to acknowledge that there was an acquittal, and yet it went ahead and seemingly completely dismissed that acquittal without explaining what weight, if any, it gave to that acquittal. And I think it bears emphasizing here... But he said that the fact that there was a firearm present was supported by proponents of the evidence so that he could take it into consideration when considering the circumstances of the offense. And so that's what he did when coming up with a sentence on the convicted counts. What else was he supposed to do? Well, there was a lot of things that the district court could have done. By way of example, the district court could have explained why it decided to credit the witness testimony about the brandishing of the gun when the jury very emphatically rejected that portion of the witness testimony. The district court could have... And the problem here is that the district court sort of indicated at the beginning that it would not consider acquitted conduct, and yet it went ahead to heavily relied on that acquitted conduct to enhance Mr. Sepulveda's sentence. Well, he used... Excuse me. I'm sorry. The problem is with being on a phone, so I apologize for talking over you. But the fact of the matter is, is that he did set out the right standard. I mean, he didn't necessarily during the sentencing say preponderance of the evidence, but he did make that clear in his order, didn't he? And so he doesn't... The jury was... The proof standard was beyond a reasonable doubt, but he employed the correct standard, at least with regard to whether he could take the facts into consideration, and he employed the preponderance of evidence standard, didn't he? He did say that he found those facts by preponderance of the evidence, but he didn't say how the jurors acquittal... Why does he have... He has to go ahead and explain... Excuse me. He has to go ahead and explain why he found them to have been credible. I can see these sentencing proceedings stretching on for days. Is that what you're saying? You're suggesting he should have analyzed each witness he found credible and as to why he found them credible? Well, that's precisely what we are suggesting, Your Honors, especially given... What case do you have... Excuse me. What case do you have that specifically says the district court judges have to analyze the evidence and identify why they found the evidence to be credible? Well, Your Honor, if you... Your Honor, look at this court's decision in U.S. v. Vaughan. The court says explicitly that the district court must consider the jurors acquittal. Now, it doesn't say... Sure, he considered it. But there's nothing on the record indicating what consideration it gave... It might have... What... Very well, it... Well, sure. If he'd been found guilty of it, 924 would have kicked in. There would have been a mandatory minimum, right? That's right. Right. So he... And he acknowledged that, didn't he? He did acknowledge that, but he didn't explain... Okay. He did acknowledge that, but he didn't explain why he would choose to believe the witnesses when the jury obviously did not. Okay. The district court could have explained that there was something... Well, can we infer from the fact that he says that he thinks that there was prominence of the evidence supporting the idea that he was brandishing a gun, that he thought that it was proved by preponderance, but just maybe not beyond a reasonable doubt, and that explains the difference between the two determinations. That might have been enough had this sentence being a guideline sentence, or even on a higher end of a guideline, but we're talking about a 53-month upward variance on top of an already very substantial guideline sentence. And this court has made it very clear on numerous occasions that the more significant the variance, the higher descriptive obligation the district court must meet in explaining itself. And we're saying that the district court here did not meet that higher obligation. Okay. I think I got that point. Can I ask you about the other point you had made, which is that you said that all of the nature of the offense was taken into account by the guidelines, but didn't the district court here talk about the particular circumstances of this particular offense, that he had menaced an elderly woman, that it led to this altercation with the neighbor, and it involved stalking in advance and all these other circumstances that he thought made it especially serious. And so, didn't he at least identify conduct that he thought was not accounted for by the guidelines, or aspects of the conduct that were not accounted for by the guidelines? First of all, I don't think the record is very clear that when the district court cited those factors, the district court was speaking specifically as to the fact that those factors weren't accounted for by the guidelines range. But second of all, I think the district court made himself very clear that this was a serious offense and that a substantial, a lengthy sentence was warranted. And I think all parties agreed on that at the sentencing. But if you want to look at the guidelines here, it's 188 months to 235 months. There's no explanation on the record why that sentence would not have been sufficient to meet the goals of sentencing. And the district court, in expressing its view in terms of how serious this crime is, didn't specifically say that those were the factors that separated this case from the main run of the cases that the HOPS Act guideline was meant to cover. I think we have that argument. You've reserved time for rebuttals, so we'll hear from you again. Let's turn now to counsel for the government. Thank you, Your Honor. Kyle Werschbach for the government. I also represented the government in trial below. May it please the court. Your Honor, I believe that the court was focusing on precisely the right factors in this case. Judge Sullivan sends the defendant to 288 months after presiding over his trial in which the government proved the defendant armed with a gun and a knife, stole narcotics and cash from the apartment of an octogenarian, and while in flight, assaulted a Good Samaritan who came to the victim's defense. Judge Sullivan stated his reasoning on the record, citing the violent nature of the offenses and the defendant's extensive criminal history, a sentence which was procedurally and substantively reasonable, and none of the arguments raised by the defendant merit reversing Judge Sullivan's carefully considered sentence. With respect to procedural reasonableness first, I will note that Judge Sullivan calculated the guidelines range. He did not treat the guidelines as mandatory. He considered the 3553A factors, did not select a sentence based on improper facts, and he adequately explained the sentence in an explanation that took up approximately six transcript pages. Nonetheless, the defendant takes issue with Judge Sullivan's explanation for his upward variance and his reliance on the defendant's firearm possession in crafting his sentence, but neither criticism has merit. So regarding Judge Sullivan's explanation of the sentence and considering the 3553A factors, Judge Sullivan found that, as the court has noted, that the violent nature of this particular robbery and the flight, when combined with the defendant's criminal history, merited a sentence of 29 years imprisonment. The defendant, however, argued that these explanations and these reasons were not good enough, saying that Judge Sullivan failed to distinguish this robbery from others and failed to adequately explain why the defendant's criminal history… Actually, before we get into that, can I ask you about the criminal history? Right? So there was this point at which the district court said, you know, but for Second Circuit precedent, I think the case in Townsend, he would have been – he might have been categorized as a career offender, but he wasn't. But then the district court emphasized, but I'm not relying on the criminal history. I'm relying only on the defendant's past criminal conduct. Is there really a difference there? I mean, if we have a decision that restricts the degree to which past offenses can be considered as part of the criminal history, why could a district court say, well, I'm not really looking at criminal history as a category. I'm just looking at past criminal conduct. Why are those two different things? I mean, shouldn't the same principles constrain both? Your Honor, I think there's two responses to that. The first is that just because the criminal history category was calculated in such a way that the offense conduct for a prior conviction would not add criminal history points does not mean that under the standard way in which courts go about sentencing defendants, that the court cannot take into consideration the facts surrounding any particular sentence, whether or not it be one, two, three, or zero criminal history points based on the guidelines. And that's exactly what the judge did here. He looked at the actual conduct that underlied the offenses that made up the defendant's criminal history, and he evaluated that underlying conduct as part of the 3553A factors. Now, the second thing I will say with respect to this is that the court's judgment in evaluating the possible criminal history category based on the court's precedent should actually give the court no pause and actually reassert that Judge Sullivan did precisely as this court instructs district courts to do, and that the judge faithfully calculated the criminal history category and determined that the defendant was not a criminal offender here. Excuse me, a career offender here. And even though he disagreed with the court's precedent on that topic, he still made that determination. Then when it came to the 3553A factors, the judge examined the conduct underlying those factors and determined that given the criminal history category, which at the time of the sentencing Judge Sullivan thought to actually be higher, he believed that the defendant's criminal conduct in the past placed him in a different situation than many of the individuals who are sentenced and are within the criminal history category that the defendant was calculated to be in, given the way that the career offender guidelines work. And the judge considered that, and he determined, as he articulated on the record, that there were certain factors that were not part of the quote-unquote box score of the guideline that led him to believe that the defendant was differently situated from others who come before the court and therefore deserving of a variance from the guideline. I understand that, but on the point about the Second Circuit precedent, isn't it possible to read the record of the district court saying, I disagree with what the Second Circuit has said about how we calculate criminal history, and therefore I'm going to consider these offenses as past conduct, and I'm going to use it to enhance the sentence the way it might have been but for that precedent? Yes, I think referred to as that idiocy, I think that's the word he used, yes. The way that the court was thinking about it, and I believe Judge Sullivan said something to this effect, was that he was thinking about the way in which individuals who are typically in the criminal history category that the defendant was calculated to be in might be different from the defendant. And when he examined the criminal history of this particular defendant, he determined that the criminal history category was not necessarily capturing everything about the defendant's prior conduct, the box score of the guidelines was not capturing everything about the defendant's conduct, and therefore that a variance would be appropriate in this case. But as the court noted, that was not Judge Sullivan's only basis for determining that a variance would be appropriate in this case. In explaining his sentence, he also concentrated on the way in which the robbery was different from other robberies that might come before the court. He explained that this was a terrified 83-year-old, and that there was an assault on a good Samaritan who was trying to assist his neighbor. So, Judge Sullivan did do exactly what the court requires, he gave an explanation for his sentence, and he differentiated the ways in which this case was different from other cases, and explained why it would merit an upward variance. He did what this court requires him to do, and therefore there was no procedural unreasonableness with respect to that determination and that explanation. Does that cover the firearm? Yeah, go ahead. I was going to ask you to go to the next point. Go ahead. And that's precisely where I was heading, Your Honor. Yeah, that's what I mean. Again, Judge Sullivan, his determination with respect to the firearm was procedurally reasonable. And as an initial matter, just to be clear, it's the government's view that Judge Sullivan found that Sepulveda possessed a firearm on the day of the robbery by a preponderance of the evidence. He stated that he credited the good Samaritan's testimony that the defendant drew a firearm in flight from the robbery, and he wrote in his order denying resentencing that the evidence of trial supported that finding by a preponderance of the evidence. As this court knows, and as was highlighted when defense counsel was giving her presentation, this court has repeatedly held that a district court may rely on acquitted conduct if it makes a factual finding by a preponderance of the evidence. This principle is based on the difference between the burdens of proof for conviction at trial and consideration of facts at sentencing, as the court so aptly pointed out. This court has long held that the latter is the appropriate burden for sentencing facts, and the jury's verdict, considering guilt beyond a reasonable doubt, does not necessarily settle the issue of what the court can and should consider at sentencing. Judge Sullivan, having presided over the trial, determined that the evidence showed by a preponderance of the evidence that the defendant had used a firearm. In addition, Judge Sullivan considered the fact that there was an acquittal, and specifically said on the record that had there been a conviction under 924C and a seven-year mandatory consecutive sentence, that his sentence in this case would have been higher. And having made that determination, there was no procedural unreasonableness in him evaluating what he viewed when he presided over the trial, in crediting a particular witness who testified about the brandishing of a firearm, and finding that fact via preponderance of the evidence. I have this question. Was the possession of the firearm double counted? So part of the calculation of the guidelines was he got two levels because of possession of a dangerous weapon, right? And then the district court goes on to talk about the firearm over and over again in defending the above guidelines sentence. So why, even if he did possess a firearm, why wasn't it already accounted for by the guidelines calculation? Your Honor, again, this is a situation in which the facts that are covered by the guideline may be broader and may be distinguishable from the particular facts that are an issue in this case. My question would be, I'm sorry to interrupt, but the question would be whether he had to specifically, as a matter of procedure, had to specifically tell us why the firearms charge baked into the guideline sentence was not enough, and why did there also have to be a variance? Did he tell us that? Did the sentencing judge tell us why there had to also be a variance in addition to the fact that it was counted under the guidelines? Your Honor, I think that the court did so not explicitly by pointing to that particular guideline, but by explaining in his explanation of his sentence and how this case differed from others, how it was that the defendant used that dangerous weapon that would be different from perhaps others who just, for example, carried a knife during the commission. But your position is that he did explain why a variance was needed despite the fact that the issue of carrying a firearm was also included in the guidelines level. Yes, Your Honor, it's the government's position that the explanation as a whole was sufficient to meet this court standard to give a reasonable to give a reasoned opinion about why a variance would be needed here. And I believe that the district court did so with respect to this firearm when it explained how the defendant used the firearm. But equally as important, there were other factors that the court considered in making this variance, and the court explained those as well, including the criminal history category, excuse me, the criminal history, such as the defendant's prior crime. Under those circumstances that you're outlining, are you saying that we do not have to focus on, we can ignore that part of the variance which was based on the firearm? That there's enough other stuff there that we don't have to worry about any part a firearm may have had in the variance? Your Honor, yes, I think that there are many factors that the court outlined in describing the variance. But that said, I think that the court also met the standard in describing the variance with respect to each part of that. But I agree with Your Honor that this court... That was a good question. Wait, wait, I'm sorry. I thought your argument wasn't that he didn't need to consider the firearm, but that even though use of a dangerous weapon might be accounted for in the guidelines, the particular circumstances of the particular use that occurred in this case, the district court explained was egregious enough to warrant a variance. Isn't that what you were arguing? Yes, that is what I was arguing, Your Honor. And to the extent that I said something different than that, I apologize. But Your Honor, that is the government's position, and it's the government's position that each of the things that Judge Sullivan cited would be enough to allow the court to find that he was reasonable in considering how this case differs from other cases. I understand that I'm not necessarily disagreeing with you, but I'm trying to figure out as I look at the case, am I supposed to be focusing... You know, I'm reading the record. Am I supposed to be focusing on whether overall there was enough of the particulars of this case to permit the variance that was in the sentence? Or are you saying that the judge specifically, if I were to read it carefully enough, the judge specifically explained why the firearms was not adequately accounted for in the guidelines, and therefore a variance was required? I think they're a little different. I'm trying to figure out what I'm supposed to be looking for. Understood, Your Honor. I think what I would say is that you can look at it holistically and you can determine whether or not there was a sufficient explanation. But I do want to make sure that I clearly state the government's position, which is that the court did go on to make a determination that is also sufficient with respect to the firearm and explaining how that firearm was used, that it was used to menace an 83-year-old woman and then pointed at a good Samaritan on the street outside of a school. So it's the government's position that with respect to that fact and the other facts that Judge Sullivan considered in finding that a variance was appropriate, that those determinations were procedurally reasonable. Before you're done, yeah, I was going to ask about substantive unreasonableness, but maybe just to focus your comments. What do we do with the fact that civil data states that a defendant's year is three and a half times longer than the median sentence for defending convicted of robbery in criminal history category three? Is there a role for us to be considering the overall length? I mean, what, how do you, doesn't that show that it was reasonably unreasonable? So, Your Honor, there is certainly a role for the court to play in considering substantive reasonableness. But it's our position that in this particular case that that statistic is not particularly helpful to the court in making that determination because Judge Sullivan, who presided over the trial and is afforded deference in this case, he considered the very specific nature of this very heinous crime and determined when looking at the particular fact that an upward variance, a significant upward variance, was appropriate in this case under the 3553A factors. And so, while... We certainly have a number of cases in which we've approved variances twice the length of the variance in this case, haven't we? Yes, Your Honor. United States v. Early, 113 months. United States v. Geraldo, that's a summary order, 127 months. So, I mean, and I certainly, if we start getting into numbers of months, all of a sudden we're headed back towards Booker, aren't we? This is in the outer area of reasonableness. And I'm sorry to interrupt you, but I don't mean to, I just... Oh, you mean to, but that's fine. No, no, no. I thought you were... I thought you had taken a breath. I apologize. No, I was just going to ask. The counsel has said we have a role to play in this, but the answer, and I think what you're saying, Judge Wesley, is the role is a very, very limited one. Precisely. Thank you. Since you're over time, why don't you wrap up the point and then we'll hear from the attorneys again. Yes, Your Honor. I think the point was very precisely, very well made. This court's role is a limited one. And this was a particularly heinous crime for which Judge Sullivan found that this particular variance was appropriate. And unless the court has any additional questions, the government would rest on its submission. Okay, thank you very much. We're going to hear from the appellant on rebuttal, Ms. Hahn. Thank you, Your Honors. A couple of points. First, on the point of the guidelines already capturing the firearm element, I agree with the Honors that not only was there a two-level enhancement for use of a firearm already baked into the guideline, but I wanted to point out that there was actually a second two-level enhancement baked into the guideline for the use of a threat of violence. So that's my first point. And the second one is that during sentencing, during and after sentencing, Mr. Sepulveda objected to portions of the PSR about his past conduct, specifically the alleged resisting arrest. In particular, the district court in that particular instance did not make any determination as to those objections. The district court simply assumed that that portion of the PSR was true. So that, we believe, weren't sending the case back for re-sentencing, since the court appeared to have relied very heavily on whatever past conduct in the PSR to drive the sentence up. And then lastly, it does appear to us that the district court simply short-circuited this court's precedent in Townsend. Excuse me for a second, Ms. Todd. The argument you just made, did you make that in your brief? Your Honor, you mean the objection? That the court erred because it didn't correct inaccuracies in the PSR? We did make that point, yes, Your Honor. You did make that in your brief? We did in our reply brief. Okay. All right. In your reply brief? You realize that the argument in the reply brief we can disregard if you didn't make it in your opening brief. You realize that, don't you? We do. Okay, thank you. And my last point being that it does appear that the district court was short-circuiting this court's precedent in Townsend by sentencing Mr. Sepulveda as if he was a career offender, notwithstanding the very clear precedent that under the categorical approach, one of Mr. Sepulveda's prior convictions did not account for any criminal history points. And with that, I will rest on our brief. Excellent. Thank you. Okay. Thank you very much, Ms. Hahn. The case is submitted. And that is the only argument on the calendar for today. And so, therefore, we are adjourned. Court is adjourned.